IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN MONTGOMERY, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | No. 2:12CV00236-JJV |
| D. PAYNE, *et al.* | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Plaintiff, Johnathan Montgomery, brought this action alleging that Defendants failed to protect him from a physical assault by another inmate at the Arkansas Department of Correction ("ADC") Eastern Arkansas Regional Unit ("EARU") (Doc. No. 2). On December 4, 2014, the Court held a bench trial. After argument and testimony from the parties, the Court determined that Plaintiff had failed to exhaust his administrative remedies against Defendant Dexter Payne. The Court also determined that Defendant Rodney Ford was entitled to a directed verdict on the merits of Plaintiff's failure to protect claims.[1]

**II.   BACKGROUND**

Plaintiff alleges that on entry to the EARU on September 28, 2012, he notified Defendant Ford that he had unspecified enemies in the unit and feared for his life. Plaintiff claims he submitted a witness statement to Sergeant Teresa Davis which specified that he feared members of the White Aryan Resistance gang ("W.A.R."). Defendant Ford testified that he was never made aware of this

---

[1]The Court notes that the docket currently lists Defendant Payne's first name as "D." and no first name is listed for Defendant Ford. The Clerk of Court shall alter the docket to reflect their complete first names.

1

statement.

After a search of Plaintiff's enemy alert list returned no known enemies, he was ordered to enter the barracks. He refused this order and was given a disciplinary by Sergeant Davis (Defendants' Trial Exhibit 2). As a result, Plaintiff was assigned thirty days in isolation (*Id.*).

While in isolation, Plaintiff submitted two inmate requests dated October 18 and 22, 2012, to Defendant Payne in which he articulated fears concerning W.A.R. and requested protective custody (Defendants' Trial Exhibits 4, 7). Plaintiff never converted either inmate request into a formal grievance. On October 24, 2012, still in isolation, Plaintiff filed a separate grievance alleging that Defendant Ford and Sergeant Davis failed to properly investigate his safety concerns (Defendants' Trial Exhibit 3). At that time, he identified his enemies as members of W.A.R. (*Id.*). Prior to receiving a grievance response from Warden Burl, Plaintiff was released into general population.

On the morning after his release, Plaintiff was physically assaulted by inmate E. Carroll, a W.A.R. prospect who sought to prove himself to gang leaders by carrying out their orders (Defendants' Trial Exhibit 6). Plaintiff testified that he sustained cuts and abrasions to his face during Carroll's assault. After the assault, Warden Burl responded to Plaintiff's October 24, 2012, grievance by noting that inmate Carroll had been placed on Plaintiff's enemy alert list (Defendants' Trial Exhibit 3). Plaintiff did not appeal this meritorious finding.

### III. ANALYSIS

#### A. Exhaustion

Before the trial commenced, Defendants Payne and Ford both renewed their argument that they were entitled to dismissal based on Plaintiff's failure to exhaust administrative remedies when he did not appeal Warden Burl's response to his grievance. Defendant Payne separately argued that

Plaintiff had failed to specifically identify him in any exhausted grievance, in contravention of ADC grievance procedure.

The Court declined to accept Defendants' first argument. Noting that Plaintiff's grievance had received a meritorious response from Warden Burl, and given that monetary damages were not available under the ADC grievance process, the Court concluded Plaintiff was not required to appeal a meritorious grievance. In so doing, it considered the United States Court of Appeals for the Eight Circuit's decision in *King v. Iowa Department of Correction,* wherein the court declined to accept an appellant's argument that, because a grievance response provided the relief he sought, he was not required to appeal the grievance to its final stage. 598 F.3d 1051, 1052 (8th Cir. 2010). The Court distinguished the immediate case by concluding that, unlike *King* where the prison promised to examine its procedures but offered no direct relief, Mr. Montgomery's matter was resolved entirely and nothing further could be achieved under ADC grievance procedure. The assault had already occurred and only Plaintiff's desire for monetary compensation remained.

The Court also found that Defendant Payne's separate exhaustion argument entitled him to dismissal. While the failure to specifically identify a prison employee in a grievance is not always fatal to exhaustion, such omission *does* preclude exhaustion where it denies prison officials the opportunity to review a defendant's relevant conduct. *See Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). Here, Plaintiff failed to exhaust a grievance which named Defendant Payne or implicated his conduct. Instead, he identified Payne only in two inmate requests. The Court therefore dismissed Payne without prejudice.

      **B.**    **Motion for Directed Verdict**

At the close of testimony and argument, Defendant Ford moved for a directed verdict, arguing that Plaintiff was unable to prove he had acted with deliberate indifference. The Court

agrees. In order to establish a successful failure to protect claim, a plaintiff must establish that the defendant actually knew of a substantial risk and failed to respond reasonably. *Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010).

Here, the evidence failed to establish that Defendant Ford knew of a substantial risk to Plaintiff's safety at the time of his entry to the EARU. While Plaintiff did tell Defendant Ford that he feared for his life and did not want to enter the barracks, based on the trial testimony and exhibits, the Court specifically finds that Plaintiff never identified any specific enemies to Defendant Ford. The Court credits the testimony of Defendant Ford on this point and concludes that he searched Plaintiff's enemy alert list and found no threats. It may be, as Plaintiff testified, that he gave Sergeant Teresa Davis the names of inmates and referenced their affiliation with W.A.R., but the evidence at trial establishes that information was not communicated to Defendant Ford.[2] Accordingly, he never knew of any substantial risk to the Plaintiff.

Based on the foregoing, the Court concludes that Defendant Ford was not deliberately indifferent in failing to investigate Plaintiff's security concerns.

## IV. CONCLUSION[3]

IT IS, THEREFORE, ORDERED that:

1. The Clerk of Court shall alter the docket to reflect that Defendant "D. Payne" is

---

[2]Defendant Ford testified that he eventually learned Plaintiff feared W.A.R. by way of Plaintiff's grievance. As that grievance named him specifically, however, Defendant Ford was precluded from taking any action related to its content by ADC and EARU policy. Defendant Ford testified that this policy exists to prevent retaliation against inmates who file grievances.

[3]The Court also notes that trial testimony revealed that Sgt. Woodard may have been made aware of Mr. Montgomery's enemies. But as noted at trial, Mr. Montgomery never made any allegations against Woodard in his Complaint. (Doc. No. 2.) Accordingly, the Court recommended dismissal of Sgt. Woodard (Doc. No. 6) and Mr. Montgomery offered no objection to this dismissal and never moved to amend his Complaint.

"Dexter Payne" and Defendant "Ford" is "Rodney Ford";

2. Defendant Payne's oral motion to dismiss for Plaintiff's failure to exhaust administrative remedies is GRANTED and Payne is dismissed without prejudice;

3. Defendant Ford's oral motion for directed verdict is GRANTED and Ford is dismissed with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 10th day of December, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE